**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| J & J SPORTS PRODUCTIONS, INC. | * | |
| | * | |
| v. | * | Case No. WDQ-11-CV-00194 |
| | * | |
| DAMICO PROPERTIES, INC. t/a | * | |
| JB'S BAR & GRILL, et al. | * | |
| | * | |

******

**REPORT AND RECOMMENDATION**

The above-referenced case was referred to the undersigned to review a Motion for Default Judgment [ECF No. 24] filed by Plaintiff J & J Sports Productions, Inc. ("J & J") and to make recommendations concerning damages, pursuant to 28 U.S.C. § 301 and Local Rule 301.6. [ECF No. 25]. Subsequently, Defendants Damico Properties, Inc., Joseph Damico, and Bethanne Damico (collectively "Defendants") filed a Motion to Set Aside Order of Default and/or Default Judgment [ECF No. 27]. J & J filed an opposition to that motion. [ECF No. 28]. For the reasons discussed herein, I respectfully recommend that Defendants' motion be DENIED, and that J & J's motion be GRANTED in part and DENIED in part. I further recommend that damages be awarded as set forth herein.

**I.   BACKGROUND**

J & J filed its Complaint on January 21, 2011, alleging that Defendants had violated 47 U.S.C. § 605 and 47 U.S.C. § 553 and committed the tort of conversion by displaying a televised boxing match at JB's Bar & Grill ("the Bar") without obtaining licensing rights from J & J.[1]

Defendants were served with the Summons and Complaint on January 25, 2011. [ECF No. 5]. On February 15, 2011, Defendants Bethanne Damico and Joseph Damico filed a consent

---

[1] Section 605 governs the unauthorized publication or use of wire or radio communications. Section 553 governs the unauthorized reception of cable service.

motion for extension of time to answer the complaint. [ECF No. 6]. No answer was ever filed. After a series of status reports regarding settlement negotiations, on September 16, 2011, J & J filed a motion for entry of default. [ECF No. 13]. After the Clerk entered default on September 20, 2011, Defendants filed a Motion for Relief from Clerk's Entry of Default. [ECF No. 16]. United States District Judge William D. Quarles, Jr. granted that motion on November 1, 2011, and afforded Defendants thirty days to file their answer and cross-complaint. [ECF No. 17]. Again, no answer was filed. On March 14, 2012, Judge Quarles ordered J & J to file and serve another motion for entry of default. [ECF No. 21]. J & J complied on April 2, 2012. [ECF No. 22]. After the Clerk again entered default, J & J filed its pending motion for default judgment on May 11, 2012. [ECF No. 24]. Defendants then filed their motion to set aside the order of default on May 25, 2012. [ECF No. 27].

## II. DEFENDANTS' MOTION TO SET ASIDE ENTRY OF DEFAULT

Federal Rule of Civil Procedure 55(c) provides that the Court "may set aside an entry of default for good cause." Although the Fourth Circuit has a "strong policy" that "cases be decided on their merits," *Dow v. Jones*, 232 F.Supp.2d 491, 494 (D. Md. 2002) (*citing United States v. Shaffer Equip. Co.,* 11 F.3d 450, 453 (4th Cir. 1993)), it has set out a list of factors to be considered in assessing good cause, including "whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204-05 (4th Cir. 2006). Under those standards, Defendants have not demonstrated good cause.

The first factor, regarding the existence of a meritorious defense, weighs in favor of J & J. The statutes providing J & J's causes of action, § 605 and § 553, are strict liability statutes.

*See Joe Hand Promotions, Inc. v. Dock Street Enters., Inc.*, 2011 WL 6141058 at *4 (D. Md. Dec. 8, 2011) ("Furthermore, the statute itself is a strict liability statute and precludes a good faith defense; knowledge is only relevant when assessing damages."). Defendants contend that they are not liable because they properly purchased the disputed boxing match through the Bar's commercial account with Comcast. Mot. to Set Aside Order of Default at 3-5. That precise defense has been rejected by courts, because intent and good faith are irrelevant in assessing liability under § 605 and § 553. *See, e.g., J & J Sports Prods., Inc. v. Aviles,* Civil No. 5:10-cv-04213 JF/HRL, 2011 WL 1884617 (N.D. Cal. May 18, 2011); *see also Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1004 (2d Cir. 1993) (noting that "§ 553 does not and was not intended to provide a good-faith defense against liability.").

The second and fourth factors relating to good cause, requiring prompt action and lack of other dilatory conduct, similarly weigh in favor of J & J. This case has already had a long and tortured procedural history. This Court has already set aside one order of default for good cause. Defendants have established a pattern of responding only when the Court has entered default. The case has been pending for more than eighteen months, and no answer has yet been filed. Defendants' pattern of delay is also relevant to assessing the third factor, prejudice to J & J. Finally, no alternate sanctions will achieve the same end, which is the prompt disposition of J & J's now long-pending claims.

Given the lack of any potentially meritorious defense to the strict liability statutes, and the delays already caused by Defendants' actions, Defendants have not met the Rule 55 good cause standard. I therefore recommend that Defendants' motion to set aside order of default be denied.

**III.     PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT**

In reviewing Plaintiff's Motion for Entry of a Default Judgment, the court accepts as true the well-pleaded factual allegations in the complaint as to liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001). It, however, remains for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action. *Id.; see also* 10A Wright, Miller & Kane, Federal Practice and Procedure § 2688 (3d ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

If the court determines that liability is established, the court must then determine the appropriate amount of damages. *Ryan*, 253 F.3d at 780-81. The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. *See, e.g., Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154 (2d Cir. 1999). In so doing, the court may conduct an evidentiary hearing. Fed. R. Civ. P. 55(b)(2). The court can also make a determination of damages without a hearing so long as there is an adequate evidentiary basis in the record for an award. *See, e.g., Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C. 2001) (court need not make determination of damages following entry of default through hearing, but rather may rely on detailed affidavits or documentary evidence to determine the appropriate sum).

In sum, (1) this Court must determine whether the unchallenged facts in Plaintiff's Complaint constitute a legitimate cause of action, and, if they do, (2) this Court must make an independent determination regarding the appropriate amount of damages.

### a. Plaintiff has established Defendants' liability.

As addressed above, liability is readily established in this case. The allegations in and the attachments to the Complaint establish that Defendants displayed the boxing match at the Bar without authorization from J & J. Compl. ¶ 13, 14 and attachments.[2] Because, as addressed above, Defendants' proposed "good faith" defense is inapplicable, J & J has stated a claim for relief under § 605 and § 553.

### b. I recommend that recovery under § 553 is most appropriate.

In both its Complaint and its motion for default judgment, J & J requests statutory damages of $100,000 for Defendants' violation of § 605, plus $50,000 for the violation of § 553, plus an additional $1,500 for the tort of conversion. "Generally, however, plaintiffs cannot recover under both statutes for the same conduct." *J & J Sports Prods., Inc. v. Castro Corp.*, Civil Action No. DKC-11-1599, 2012 WL 1883764 (D. Md. May 21, 2012) (quoting *J & J Sports Prods., Inc. v. Quattrocche*, Civil Action No. WMN–09–CV–3420, 2010 WL 2302353, at *1 (D. Md. June 7, 2010)). "Courts have similarly not allowed recovery for claims of conversion, as they would not exceed those under §§ 553 or 605 and would result in double-recovery." *J & J Sports Prods., Inc. v. Castro Corp.*, Civil Action No. 11–cv–00188–AW, 2011 WL 5244440, at *3 (D. Md. Nov. 1, 2011) (citing *J & J Sports Prods., Inc. v. J.R .'Z Neighborhood Sports Grille, Inc.*, Civ. No. 2:09–03141, 2010 WL 1838432, at *2 (D.S.C. 2010)). J & J's Complaint attaches a Comcast bill showing that Defendants obtained the disputed program via cable television service. Compl. ¶ 14 and attachment. As a result, analysis of damages under § 553, which governs the unauthorized use of cable communications, is the most appropriate. *See Joe Hand Promotions, Inc.*, 2011 WL 6141058 at *4 n. 3. ("Where Dock

---

[2] The four attachments to J & J's Complaint are not numbered or otherwise identified.

Street acknowledges that it showed the Program through its cable connection, there is no logical basis to posit or imagine some secondary satellite violation.")

### c. I recommend that Plaintiff be awarded statutory damages in the amount of $2,200.

47 U.S.C. § 553(c)(3)(A)(ii) entitles a plaintiff to an award "as the court considers just," between a range of $250 and $10,000 for each unauthorized reception and publication of cable service in violation of section 553(a). In support of its claim for statutory damages in this case, J & J attaches the affidavit of Jauquine Tantillo, a private investigator who observed the broadcast on televisions in the Bar on the evening of the event. [ECF No. 24-2]. Ms. Tantillo was not charged an entrance fee, remained in the restaurant for approximately ten minutes, and counted between fourteen and seventeen patrons inside. J & J has also filed an affidavit from Joseph M. Gagliardi, its President, indicating that the sublicense fee for broadcasting the boxing match in the Bar would have been $2,200. [ECF No. 29, Exh. 2]. Requiring Defendants to pay that sublicense fee is just. Accordingly, I recommend that J & J be awarded statutory damages under § 553(c)(3)(A)(ii) in the amount of $2,200.

### d. I recommend that no award of enhanced damages be made.

Pursuant to § 553(c)(3)(B), where the court finds that a violation was "committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages ... by an amount of not more than $50,000." Relying heavily on an argument of deterrence, J & J requests the maximum amount of enhanced damages.

In *Quattrocche*, 2010 WL 2302353, at *2, Judge Nickerson explained:

> In determining whether enhanced damages are warranted, other courts in this Circuit have looked to several factors: 1) evidence of willfulness; 2) repeated violations over an extended period of time; 3) substantial unlawful monetary gains; 4) advertising the broadcast; and 5) charging an admission fee or charging premiums for food and drinks.

"Willfullness has been defined by the Supreme Court as 'disregard for the governing statute and an indifference for its requirements." *Cablevision Sys. N.Y. City Corp. v. Lokshin*, 980 F. Supp. 107, 114 (E.D.N.Y. 1997) (*quoting Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 126 (1985)). No such disregard has been exhibited here, where the Comcast bill demonstrates that the Bar had a valid commercial account and paid Comcast's fee for the broadcast. In similar cases, other courts have declined to award enhanced damages. *See J & J Sports Prods., Inc. v. Aviles*, Case No. 5:10-cv-04213-JF/HRL, 2011 WL 1884617 at *4 (N.D. Cal. May 18, 2011) (awarding no enhanced damages in case where Defendant ordered program from DirectTV); *Joe Hand Promotions, Inc. v. Easterling*, 2009 WL 1767579 (N.D. Ohio June 22, 2009) (awarding no enhanced damages where Defendant paid for program on residential DirectTV account for display at commercial establishment).

Other factors similarly mitigate against an award of enhanced damages. There is no evidence of repeated violations by Defendants. There is no evidence of substantial unlawful monetary gains as a result of displaying the boxing match. In fact, the private investigator found only between fourteen and seventeen customers in the Bar during the ten minutes she was present. There is no evidence that the Bar advertised the broadcast or charged a premium for food and drinks during the boxing match. The private investigator confirmed that no admission fee or cover was charged.

Specific deterrence, while a valid concern in many cases involving the unauthorized broadcast of licensed programming in a commercial establishment, is not equally valid in this case. As noted above, the Bar has no history of these types of offenses. Moreover, although J & J alleges that the boxing match was encrypted, the record demonstrates that Defendants ordered the program on the Bar's commercial account with Comcast. There is no evidence of, for

example, Defendants modifying their cable or satellite reception equipment to receive the program unlawfully. None of the methods of "signal pirating" described in Mr. Gagliardi's affidavit were used by Defendants. [ECF No. 29 ¶ 9]. In this case, the Bar simply used its valid commercial account to order the program, and paid the fee charged to it by Comcast. Calling Defendants' actions "theft" is therefore unjustified. Defendants are clearly now on notice of the limits of the Bar's commercial account with Comcast, and any future transgression likely will result in a more significant award of damages. On these facts, however, I respectfully recommend that this Court decline to exercise its discretionary authority to award enhanced damages.

## IV.   CONCLUSION

For the reasons set forth above, I recommend that:

1. The Court DENY Defendants' Motion to Set Aside Order of Default [ECF No. 27];

2. The Court GRANT Plaintiff's Motion for Default Judgment [ECF No. 24]; and

3. The Court award Plaintiff $2,200.00 in damages.

I also direct the Clerk to mail a copy of this Report and Recommendation to Defendants. Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Dated: July 11, 2012                                    /s/
                                              Stephanie A. Gallagher
                                              United States Magistrate Judge