IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

J&J SPORTS PRODUCTIONS, INC.,   *

   Plaintiff,   *

      v.   *   CIVIL NO.: WDQ-11-0194

DAMICO PROPERTIES, INC., *et al.*,   *

   Defendants.   *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

J&J Sports Productions, Inc. ("J&J") sued Damico Properties, Inc. (t/a "JB's Bar & Grill," or "JB's Bar") and others[1] (collectively, "the Defendants") for violations of 47 U.S.C. § 605 and 47 U.S.C. § 553,[2] and conversion. Pending are J&J's objections to Magistrate Judge Stephanie A. Gallagher's Report and Recommendation ("R&R") on J&J's motion for default judgment and the Defendants' motion to set aside default. For the following reasons, J&J's objections will be overruled, and the Magistrate Judge's R&R will be adopted.

---

[1] J&J also sued Joseph A. Damico and Bethanne Damico. ECF No. 1.

[2] Sections 605 and 553 are provisions of the Cable Communications Policy Act of 1984, Pub. L. No. 98-549, 98 Stat. 2779, which amended the Communications Act of 1934.

I.  Background[3]

By contract, J&J purchased the exclusive nationwide television distribution rights to "*The Dream Match": Oscar De La Hoya v. Manny Pacquiao Welterweight Championship Fight Program*," (the "program"), which was telecast nationally on December 6, 2008.  Compl. ¶ 9.[4]  J&J entered into sublicensing agreements with "various commercial entities" in North America, including in the State of Maryland.  *Id.* ¶ 10.  The Defendants displayed the program at JB's Bar without first obtaining licensing rights from J&J.  *Id.* ¶ 12.  U.S. Enforcement Bureau investigator Jauquine Tantillo observed and documented the event.  *See* Tantillo Aff.  According to Tantillo, JB's Bar has a capacity of 100 people; when the program began to air, about 17 patrons were present.  *Id.*  The program was played on five televisions.  *Id.*

On January 21, 2011, J&J sued the Defendants for violating 47 U.S.C. § 605 and 47 U.S.C. § 553,[5] and for conversion.  ECF

---

[3] In reviewing a motion for entry of a default judgment, the plaintiff's well-pleaded allegations are accepted as true as to liability.  *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001).

[4] The program included "under-card bouts" and fight commentary.  Compl. ¶ 9.

[5] Section 605 applies to the theft of a radio communication; § 553 applies to communication thefts from a cable network.

No. 1.[6]  The Defendants were served on January 25, 2011.  *See* ECF No. 5.  On February 15, 2011, the individual Defendants filed a consent motion for extension of time to answer the complaint.  ECF No. 6.  No answer was filed.  *See* docket.  On September 16, 2011, J&J moved for entry of default, ECF No. 13, which the Clerk granted on September 20, 2011, ECF No. 15.  On October 12, 2011, the Defendants moved for relief from and to strike the Clerk's entry of default.  ECF No. 16.  On November 1, 2011, the Court granted the Defendants' motion.  ECF No. 17.  On December 22, 2011, the Clerk received the Defendants' answer and third-party claim, but they were returned for noncompliance with Local Rule 101.  *See* ECF No. 20.  The Defendants did not file another response.  On March 14, 2012, the Court ordered J&J to move for entry of default and to file a motion for default judgment within 30 days; J&J complied.  ECF No. 21; *see* ECF Nos. 22, 24.[7]

On May 11, 2012, pursuant to 28 U.S.C. § 636, Fed. R. Civ. 72(b), and Local Rule 301.6, the Court referred the matter to Magistrate Judge Stephanie A. Gallagher for an R&R on J&J's

---

[6] J&J sought $100,000 in statutory damages for the § 605 violation, $50,000 in statutory damages for the § 553 violation, and compensatory damages for the conversion.  Compl. at 6-7.  J&J also requested reasonable attorney's fees and costs.  *Id.*

[7] J&J timely moved for entry of default, which the Clerk granted on April 5, 2012; however, J&J's motion for default judgment was not timely filed.  *See* ECF Nos. 22-24.  In addition to seeking the statutory damages identified in its complaint, J&J requested $1500 for the conversion claim, for a total of $151,500.  ECF No. 24 at 2.

motion for default judgment. ECF No. 25. On May 25, 2012, the Defendants moved to set aside the order of default. ECF No. 27. On June 11, 2012, J&J opposed the Defendants' motion. ECF No. 28. On July 11, 2012, the Magistrate Judge issued the R&R, in which she recommended that the Court: (1) deny the Defendants' motion to set aside the order of default; (2) grant J&J's motion for default judgment; and (3) award J&J $2200 in damages. ECF No. 30 at 8. The Defendants did not object. *See* docket. On July 25, 2012, J&J timely objected. ECF No. 31.

II. Analysis

   A. Legal Standard

   Under the Magistrate Judges Act, 28 U.S.C. § 636, a district judge may designate a magistrate judge to conduct hearings (if necessary) and report proposed findings of fact and recommendations for action on a dispositive motion. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); *see also* Local Rule 301.5(b) (D. Md. 2011). A motion for default judgment is a dispositive motion for purposes of the Magistrate Judges Act. *See Callier v. Gray*, 167 F.3d 977, 980-82 (6th Cir. 1999); *see also* Local Rule 301.6(a1) (D. Md. 2011).

   A party aggrieved by a magistrate judge's R&R as to a dispositive motion must file "specific written objections to the proposed findings and recommendations" within 14 days. Fed. R. Civ. P. 72(b)(2). The reviewing judge "shall make a *de novo*

determination of those portions of the [magistrate judge's] report . . . to which objection is made." 28 U.S.C. § 636(b)(1)(C). The judge "may accept, reject, or modify, in whole or in part, the findings or recommendations," and "may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

Arguments raised for the first time in an objection to an R&R are waived. *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005). The Court will not conduct *de novo* review based on "objections to strictly legal issues [when] no factual issues are challenged." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).[8] Further, the "Court will reject" an objection that neither conducts "statutory analysis nor cites case law in support." *United States v. O'Neill*, 52 F. Supp. 2d 954, 967 (E.D. Wis. 1999); *cf. Farmer v. McBride*, 177 F. App'x 327, 331 (4th Cir. 2006) (per curiam) (district court need not review "general and conclusory objections that do not direct the court to a specific error").

Under Fed. R. Civ. P. 55, a district court may enter a default judgment against a properly served defendant who fails

---

[8] *See also Hunt v. Rushton*, 33 F. App'x 83, 83 (4th Cir. 2002) (per curiam) ("[A] litigant may forfeit the right to de novo review if . . . the objections are to strictly legal issues and no factual issues are challenged."); *Keeler v. Pea*, 782 F. Supp. 42, 45 (D.S.C. 1992) (objection to a legal conclusion was not entitled to *de novo* review).

to defend or otherwise appear. Fed. R. Civ. P. 55(b)(2).[9] The Fourth Circuit strongly prefers that cases be decided on their merits, not by default judgment. *United States v. Schaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993).[10]

B. The Merits

The Magistrate Judge awarded J&J $2200 in statutory damages under 47 U.S.C § 553(c)(3)(A)(iii), but declined to award enhanced damages under § 553(c)(3)(C). ECF No. 30 at 6-7. J&J objects to the amount of statutory damages, and the lack of enhanced damages, on the grounds that they are "insufficient under the facts of this case and in keeping with the important policy consideration of deterring future acts of piracy (both by these specific Defendants and by the general public)." ECF No. 31 at 3. The R&R has been reviewed for clear error with respect to substantive issues as to which there was no objection. *See*

---

[9] If it found that the defendants had defaulted, the Court would accept as true the well-pled facts in the plaintiff's complaint, "but [even] a defaulting defendant is not held to admit conclusions of law." *United States v. $3,500.00 in U.S. Currency*, No. 5:07-CV-312-F, 2008 WL 215807, at *1 (E.D.N.C. Jan. 24, 2008) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). Rather, it remains for the Court to determine whether the unchallenged factual allegations "support a claim and the relief sought." *Id.*

[10] A plaintiff cannot obtain default judgment without first obtaining an entry of default against the defendant. *Husain v. Casino Control Comm'n*, 265 F. App'x 130, 133 (3d Cir. 2008) ("entry of default by the Clerk ... constitutes a general prerequisite for a subsequent default judgment"); *Romero v. Barnett*, No. 09-2371-DKC, 2011 WL 1938147, *2 (D. Md. May 20, 2011).

*Diamond*, 416 F.3d at 315-16 (*citing* Fed. R. Civ. P. 72 advisory committee's note).  There being no clear error, the Court will consider J&J's objections *de novo*.

1. Statutory Damages Under § 553[11]

J&J argues that the Magistrate Judge's statutory damages award should be increased from $2200 to $10,000.  *Id.* at 1-2.

Section 553(c)(A) governs damages awarded by any court under the section.  Under § 553(c)(3)(A)(ii), a § 553 plaintiff is entitled to statutory damages in whatever amount "the court considers just"--but between $250 and $10,000--for "all violations involved in the action."  Tantillo established that JB's Bar had a capacity of about 100 people.  *See* ECF No. 24-2 (Tantillo Aff.).  On the night of the unlawful publication, the bar did not charge an entrance fee, and Tantillo stated that she counted, at most, 17 patrons when the program began to air.  *Id.*

---

[11] J&J's complaint requested $100,000 for the Defendants' § 605 violation; $50,000 for the § 553 violation, and § 1500 for conversion.  *See* Compl. at 6-7.  Plaintiffs generally cannot recover under §§ 605 and 553 for the same conduct.  *J&J Sports Prods., Inc. v. Castro Corp.*, No. DKC-11-1599, 2012 WL 1883764 (D. Md. May 21, 2012).  Courts similarly prohibit additional recovery for conversion, as the damages "would not exceed those under §§ 553 or 605 and would result in double-recovery."  *J&J Sports Prods., Inc. v. Castro Corp.*, No. 11-cv-00188-AW, 2011 WL 5244440, at *3 (D. Md. Nov. 1, 2011).  Because the Defendants obtained the program via cable television service, *see* Compl. ¶ 14 and attachment, the Magistrate Judge determined that analysis under § 553 was appropriate.  ECF No. 30 at 5 (*citing Joe Hand Promotions, Inc. v. Dock Street Enters., Inc.*, No. WMN-11-1973, 2011 WL 6141058, at *4 n.3 (D. Md. Dec. 8, 2011)).  J&J does not dispute this determination.  *See* ECF No. 31 at 1.

The program was shown on five televisions. *Id.* According to J&J's President Joseph M. Gagliardi, the sublicense fee for broadcasting the program would have been $2200. ECF No. 29, Ex. 2. The Magistrate Judge decided that requiring the Defendants to pay the sublicense fee would be "just," and ordered statutory damages in that amount. ECF No. 30 at 6.

The $2200 recommended by the Magistrate Judge is well above the statutory minimum of $250. *See* § 553(c)(3)(A)(ii). This Court agrees that the statutory maximum of $10,000 is inappropriate, because J&J has offered no evidence as to any profit--such as proceeds from a cover charge--realized by the Defendants from showing the program. *See* Tantillo Aff. The Magistrate Judge's $2200 statutory damages award will be adopted.

   2. Enhanced Damages Under § 553

J&J also objects to the Magistrate Judge's decision not to award enhanced damages, which it seeks in the amount of $50,000. ECF No. 31 at 1, 2.

Under § 553(c)(3)(B), in any case where the court finds the violation was committed "willfully and for purposes of commercial advantage or private financial gain," the court may "in its discretion" increase the statutory damages award "by an amount of not more than $50,000." To determine whether enhanced damages are warranted, other courts in this circuit have

considered: "(1) evidence of willfulness; (2) repeated violations over an extended period of time; (3) substantial unlawful monetary gains; (4) advertising the broadcast; and (5) charging an admission fee or charging premiums for food and drinks."[12]  The Magistrate Judge found that the Defendants' conduct was not willful, because JB's Bar had ordered the program through Comcast at the lesser residential rate of $54.99, and thus did not "disregard" the statute entirely.  See ECF No. 30 at 7.  Because J&J also offered no evidence of repeated violations, substantial unlawful monetary gains, advertisement of the broadcast, or an admission fee to JB's Bar on the night in question, the Magistrate Judge concluded that enhanced damages were not advisable.  Id. at 8.

J&J disputes the Magistrate Judge's characterization of the Defendants' conduct as not "willful," on the grounds that the *commercial* signal was encrypted and "the only way for Defendants to obtain it lawfully was through payment of $2,200 to Plaintiff."  ECF No. 31 at 6 n.5.  "Willfulness has been defined by the Supreme Court as 'disregard for the governing statute and an indifference for its requirements.'"[13]  There is authority

---

[12] *J & J Sports Prods., Inc. v. Quattrocche*, No. WMN-09-CV-3420, 2010 WL 2302353, at *2 (D. Md. June 7, 2010).

[13] *Cablevision Sys. N.Y. City Corp. v. Lokshin*, 980 F. Supp. 107, 114 (E.D.N.Y. 1997) (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126 (1985)).

that a defendant's piracy is not "willful" when the defendant paid for the program in question, though not at the commercial rate. *See, e.g., Joe Hand Promotions, Inc. v. Easterling*, No. 4:08 CV 1259, 2009 WL 1767579, at *6 (N.D. Ohio June 22, 2009). This Court agrees that the violation was not willful, because the Defendants had a valid commercial account through Comcast, and paid Comcast's fee for the program. *See* Compl. attachment (Comcast Bill).

Even if the Defendants' conduct were willful and intended to gain a commercial advantage, enhanced damages would not be appropriate. "Where there are no allegations of repeat behavior or otherwise egregious willfulness warranting harsh punitive damages, courts in this Circuit have varied in awarding enhanced damages from no enhanced damages to up to five times the statutory damage amount." *Quattrocche*, 2010 WL 2302353, at *3. "[T]he principle of proportionality governs here: distributors should not be overcompensated and statutory awards should be proportional to the violation." *Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F. Supp. 2d 1196, 1198 (N.D. Cal. 2000). J&J principally argues that enhanced damages are warranted because of the need for specific and general deterrence. *See* ECF No. 31 at 7-10. Regarding J&J's specific deterrence rationale, the Magistrate Judge noted that "[the] Defendants are clearly now on notice of the limits of the Bar's commercial account with

Comcast, and any future transgression likely will result in a more significant award of damages." ECF No. 30 at 7-8.

In cases involving the piracy statutes, some courts reference the need for general, in addition to specific, deterrence. *See, e.g., J&J Sports Prods., Inc. v. Brazilian Paradise, LLC*, 789 F. Supp. 2d 669, 677 (D.S.C. 2011) (recognizing that "a firm judicial hand is required to stop this predatory behavior, which is outright thievery, and to compensate the aggrieved appropriately"); *Joe Hand Promotions, Inc. v. Gamino*, No. 1:10-cv-01544-AWI-SKO, 2011 WL 66144, at *4 (E.D. Cal. Jan. 10, 2011) (stating that "the amount of damages awarded should be . . . adequate to deter these Defendants *and others* from committing similar acts in the future" (emphasis added)); *J&J Sports Prods., Inc. v. Greene*, No. 10-0105, 2010 WL 2696672, at *5 (D. Md. July 6, 2010) ("If only statutory damages were awarded, there would be little to deter Defendant *or other similarly situated businesses* from risking future violations." (emphasis added)).

Here, the Defendants' conduct is better characterized as inadvertent than predatory. In the absence of any evidence that the Defendants acted willfully, repeatedly violated antipiracy laws, or substantially profited from the violation, the Magistrate Judge correctly concluded that enhanced damages were not appropriate.

III. Conclusion

For the reasons stated above, J&J's objections will be overruled, and the Magistrate Judge's R&R will be adopted.

_____3/19/13_____   _____
Date                                William D. Quarles, Jr.
                                    United States District Judge